IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SETH EUGENE LAIZURE,　　　　　　　　　　　　Case No. 3:17-cv-01254-SB

　　　　　Plaintiff,　　　　　　　　　　　　**OPINION AND ORDER**

　　　v.

WASHINGTON COUNTY, by and through
WASHINGTON COUNTY SHERIFF'S
OFFICE, PHONG TRAN,

　　　　　Defendants.

**BECKERMAN, U.S. Magistrate Judge.**

　　　Plaintiff Seth Eugene Laizure ("Laizure") filed this action against Defendants Phong Tran ("Deputy Tran") and Washington County (together, "Defendants"), alleging violations of the First and Fourth Amendments pursuant to 42 U.S.C. § 1983 ("Section 1983"), as well as state law claims for false arrest and malicious prosecution. Both Laizure and Defendants filed motions for summary judgment pursuant to Fed. R. Civ. P. 56(a). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. For the reasons explained below, the Court grants Laizure's motion for summary judgment and denies Defendants' motion for summary judgment.

# BACKGROUND[1]

Laizure and Kena Taylor ("Taylor") share a daughter. (Dep. of Seth Laizure ("Laizure Dep.") 12:8-18, Mar. 18, 2019, ECF No. 58-1.) Laizure and Taylor ended their relationship in June 2014. (Laizure Dep. 12:8-18.)

On the morning of August 12, 2015, Deputy Tran was dispatched to respond to a harassment complaint. (Decl. John Burgess Supp. Pl.'s Mot. Summ. J. ("Burgess Decl.") Ex. A, at 5, ECF No. 56-1.) At 6:58 p.m., Taylor reported to Deputy Tran that she had been receiving harassing phone calls and text messages from Laizure. (Burgess Decl. Ex. A, at 6.) Taylor requested that the Sheriff's Office notify Laizure that he is no longer allowed to call or text her. (Burgess Decl. Ex. A, at 6.)

After his visit with Taylor, Deputy Tran called Laizure. (Burgess Decl. Ex. A, at 6.) Deputy Tran advised Laizure that he was calling to help Laizure and keep Laizure from getting into trouble. (Burgess Decl. Ex. A, at 7.) Deputy Tran advised Laizure not to call or text Taylor again. (Burgess Decl. Ex. A, at 7.) Laizure responded that his attorney had advised him he could speak with Taylor directly to exchange custody of their daughter, Laizure requested that Deputy Tran not call him again, and Laizure hung up the phone. (Burgess Decl. Ex. A, at 7; Decl. of Seth Laizure ("Laizure Decl.") ¶ 4, ECF No. 55.) After the call ended, Deputy Tran immediately called Laizure a second time. (Burgess Decl. Ex. A, at 7.) Deputy Tran notified Laizure that if he called or texted Taylor after 7:35 p.m. on August 12, 2015, he would arrest Laizure for telephonic harassment. (Burgess Decl. Ex. A, at 7.)

---

[1] The facts set forth herein are either undisputed or viewed in the light most favorable to Defendants.

Once the second phone call ended between Deputy Tran and Laizure, Deputy Tran called Taylor's cell phone to notify her that he had contacted Laizure and advised him not to contact Taylor. (Burgess Decl. Ex. A, at 7.) While Deputy Tran and Taylor spoke on the phone, Taylor notified Deputy Tran that Laizure was calling her home phone. (Burgess Decl. Ex. A, at 7.) Deputy Tran drove to Taylor's residence to take a photo of the caller-identification screen on Taylor's home phone. (Burgess Decl. Ex. A, at 8.)

When Deputy Tran arrived at Taylor's home, he saw Laizure parked nearby. (Burgess Decl. Ex. A, at 8.) Deputy Tran entered Taylor's home to speak with Taylor. (Burgess Decl. Ex. A, at 8.) Taylor showed Deputy Tran the caller-identification screen on her home phone, and Deputy Tran observed that a call came in at 7:36 p.m. from Laizure's phone number. (Burgess Decl. Ex. A, at 8.)

Deputy Tran returned to the street outside Taylor's residence and spoke with Laizure. (Decl. Kimberly Stuart Supp. Defs.' Mot. Summ. J. ("Stuart Decl.") Ex. 3, ECF No. 58-3.) Deputy Tran asked Laizure about his call to Taylor and asked why Laizure called Taylor's home phone right after Deputy Tran ordered Laizure not to call Taylor. (Stuart Decl. Ex. 3, at 5.) Laizure explained that he had driven his daughter to Taylor's home because he was scheduled to drop off his daughter, and he called ahead to let Taylor know he was close. (Stuart Decl. Ex. 3, at 2, 5; Laizure Decl. ¶ 5.)[2] He reported that he had permission from Taylor's lawyer to communicate with Taylor directly about dropping off their daughter. (Stuart Decl. Ex. 3, at 5.) Taylor had provided the same information to Deputy Tran. (Stuart Decl. Ex. 3, at 5.) When Laizure explained that he called Taylor about dropping off their daughter, Deputy Tran

---

[2] The parties confirmed at oral argument that there is no dispute that Laizure's daughter was in his car when he arrived at Taylor's home, and he dropped off his daughter with Taylor as scheduled.

responded, "But when I call you and I tell you twice, 'Do not call or text Kena or you will be arrested,' that is a direct order that is not to be violated, especially when I tell you, 'I will arrest you if you do this,' but you still did it anyway." (Stuart Decl. Ex. 3, at 5.)

Moments later, Deputy Tran notified Laizure that he was under arrest for telephonic harassment. (Stuart Decl. Ex. 3, at 6.) In his police report, Deputy Tran stated that he "developed PC to arrest Laizure for the crime of Telephonic Harassment . . . based on the fact Laizure admitted to calling Taylor after I had told him not to do so." (Stuart Decl., Ex. 5 at 4.)

The Washington County District Attorney's Office charged Laizure with a single count of telephonic harassment under OR. REV. STAT. 166.090(1)(b). (Stuart Decl. Ex. 8.) A Washington County Circuit Court judge granted Laizure's motion for judgment of acquittal immediately following the District Attorney's presentation of evidence, stating "I don't feel like the State has proved beyond a reasonable doubt, even in the light most favorable to the State, that the defendant intentionally harassed or annoyed Ms. Taylor." (Stuart Decl. Ex. 4, at 14.)

Laizure's counsel asked Deputy Tran during his deposition whether it was Deputy Tran's understanding that "if a person tells somebody not to call them and they do call them regardless of the purpose of the phone call, that constitutes telephonic harassment?" (Burgess Decl. Ex. A, at 13.) Deputy Tran responded, "[y]es." (Burgess Decl. Ex. A, at 13.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses,

PAGE 4 – OPINION AND ORDER

weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006). (citation and quotation marks omitted). "[T]he court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## II. DISCUSSION

Laizure brings five claims: (1) Section 1983 First Amendment retaliation, (2) Section 1983 false arrest, (3) Section 1983 malicious prosecution, (4) false arrest under Oregon state law, and (5) malicious prosecution under Oregon state law.

In his motion, Laizure moves for summary judgment on his state and Section 1983 false arrest claims, on the ground that Deputy Tran arrested him without probable cause. Laizure also moves for partial summary judgment on his state and federal malicious prosecution claims with respect to three of the four required elements: (a) criminal proceedings were instituted against him, (b) those criminal proceedings terminated in his favor, and (c) the proceedings were not based on probable cause. For the reasons set forth below, the Court grants Laizure's motion.

Defendants move for summary judgment on all of Laizure's claims, on the ground that the arrest and subsequent prosecution were based on probable cause, an absolute defense to all claims. Defendants also move for summary judgment on Laizure's Section 1983 claims on the

PAGE 5 – OPINION AND ORDER

ground of qualified immunity. For the reasons set forth below, the Court denies Defendants' motion for summary judgment.

### A. False Arrest Claims

#### 1. Legal Standard

Laizure has alleged false arrest claims under Oregon law and Section 1983. To establish a false arrest claim under Oregon law, a plaintiff must prove the following elements: "(1) the defendant must confine the plaintiff; (2) the defendant must intend the act that causes confinement; (3) the plaintiff must be aware of the confinement; and (4) the confinement must be unlawful." *Miller v. Columbia Cty.*, 282 Or. App. 348, 353-54 (2016) (citation omitted). "[T]he existence of probable cause does render an arrest lawful as a matter of law." *Id.* at 355. "A claim for [false] arrest is cognizable under § 1983 as a violation of the Fourth Amendment." *Dubner v. City & Cty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001). "The absence of probable cause is a necessary element of [a] § 1983 false arrest" claim. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015).

To arrest a person lawfully under the Fourth Amendment, a law enforcement officer must have probable cause to believe that "the [person] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause exists where "under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability" that the arrestee had committed an offense. *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1989). Whether the officer's knowledge and the information available amounts to probable cause is a "practical, common-sense decision." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause is an "objective standard" and "[t]he arresting officer's subjective intention is immaterial in judging whether their actions were reasonable for Fourth Amendment purposes." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007).

"The objective federal standard applies in a section 1983 action premised on an allegedly unlawful arrest." *Mata-Gonzalez v. Monico*, No. 3:11-cv-00260-PK, 2013 WL 5476952, at *4 (D. Or. Sept. 27, 2013); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that an "arresting officer's subjective state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause"). Oregon courts have held that probable cause also requires a subjective component: "An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances." *State v. Owen*, 302 Or. 196, 204 (1986). "For an officer's belief to be objectively reasonable, the facts as the officer perceives them must actually constitute a violation." *State v. Stookey*, 255 Or. App. 489, 491 (2013).

### 2. Analysis

Deputy Tran arrested Laizure for telephonic harassment. Under Oregon law, telephonic harassment is a crime whereby a "caller intentionally harasses or annoys another person . . . by causing such other person's telephone to ring, knowing that the caller has been forbidden from so doing by a person exercising lawful authority over the receiving telephone." OR. REV. STAT. § 166.090(1)(b). The Court must determine whether the facts known to Deputy Tran when he arrested Laizure would lead a reasonably prudent person to conclude that there was a fair probability Laizure committed the crime of telephonic harassment.

The Court finds that the facts known to Deputy Tran provided him with no reasonable basis to believe that Laizure made the 7:36 p.m. call to Taylor with an intent to harass or annoy. The purpose of Laizure's 7:36 p.m. call to Taylor is undisputed on this record: Laizure called to inform Taylor that he was dropping off their daughter. With respect to that call, on which the criminal charge was based, Deputy Tran knew of no facts to support a conclusion that Laizure called with the intent to harass or annoy Taylor. Thus, a reasonable person would not conclude

PAGE 7 – OPINION AND ORDER

that there was a fair probability that Laizure committed the crime of telephonic harassment with respect to the 7:36 p.m. call. As a result, probable cause did not support Deputy Tran's arrest of Laizure.

Both the federal and state probable cause standards require an objectively reasonable belief that the facts known to the officer at the time of the arrest constitute probable cause, and here Deputy Tran's belief that Laizure had committed the crime of telephonic harassment was not objectively reasonable. Accordingly, the Court finds that Deputy Tran did not have probable cause to arrest Laizure, and enters summary judgment for Laizure on his Section 1983 and state false arrest claims.[3]

### B. Malicious Prosecution Claims

#### 1. Legal Standard

Laizure has also alleged malicious prosecution claims under Oregon law and Section 1983. To establish a malicious prosecution claim under Oregon law, a plaintiff must prove the following elements:

> (1) [t]he commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) [t]he termination of the proceeding in the plaintiff's favor; (3) [t]he absence of probable cause to prosecute the action; (4) [t]he existence of malice, or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication on the claim; and (5) [d]amages.

*Perry v. Rein*, 215 Or. App. 113, 125 (2007) (quoting *Alvarez v. Retail Credit Ass'n*, 234 Or. 255, 259-60 (1963)). "'In an action for malicious prosecution the existence of malice in the original proceeding is always a question of fact exclusively for the determination of the jury[.]'" *Shipman v. City of Portland*, 8 Or. App. 420, 425 (1972) (citation omitted). Absence of probable

---

[3] The Court concludes that Deputy Tran is not entitled to qualified immunity on Laizure's Section 1983 claims. *See* Section II.D.

cause may be enough for a jury to find malice. *See Ira v. Columbia Food Co.*, 226 Or. 566, 574 (1961) (holding that the "inference of malice from want of probable cause is one for the jury to draw") (citation omitted); *see also Horstman v. City of Hillsboro*, No. 3:15-cv-00203-PK, 2016 WL 11188703, at *17 (D. Or. Aug. 17, 2016) (denying the defendant's motion for summary judgment on a Section 1983 malicious prosecution claim because the arrest of the plaintiff without probable cause could reasonably support an inference of malice).

"'[A] plaintiff alleging malicious prosecution under section 1983 must . . . establish: (1) the elements of the state law tort; and (2) an intent to deprive the plaintiff of a constitutional right.'" *Evans v. Multnomah Cty.*, No. 07-CV1532-BR, 2009 WL 1011580, at *11 (D. Or. Apr. 15, 2009) (citations omitted).

### 2. Analysis

Laizure moves for summary judgment on the first three elements of his malicious prosecution claim (which are also relevant to his Section 1983 claim). Defendants do not contest the first or second elements, but assert that Laizure cannot establish the third (probable cause) element because Deputy Tran had probable cause to arrest Laizure. Based on the analysis set forth above, the Court concludes that there was no probable cause for the arrest. Therefore, the Court grants Laizure's motion for summary judgment as to the first three elements of Laizure's malicious prosecution claim.

## C. First Amendment Claim

Defendants move for summary judgment on Laizure's First Amendment retaliation claim on the ground that causing a phone to ring is not protected First Amendment activity.

### 1. Legal Standard

The First Amendment protects private telephone conversations between individuals, unless the communications fall under some exception to protected expression such as obscene

PAGE 9 – OPINION AND ORDER

speech. *See State v. Ray*, 302 Or. 595, 601 (1987) (holding that prior version of Oregon's telephonic harassment statute was an overbroad restriction on First Amendment speech because it could prohibit, *inter alia*, "calls between spouses" and other private conversations). Law enforcement orders prohibiting or restricting protected expression are subject to First Amendment protection. *See, e.g.*, *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 259-60 (6th Cir. 2018) (holding that a police order forcing protesters to leave an event violated the First Amendment). "Constitutionally protected free expression . . . applies with equal force to protect free expression in personal and institutional relationships." *State v. Moyle*, 299 Or. 691, 702 (1985).

### 2. Analysis

Oregon's telephonic harassment statute makes it unlawful to cause another's telephone to ring without a communicative purpose. OR. REV. STAT. § 166.090(a); *see also Moyle*, 299 Or. at 702 (noting that "[t]he existence of *any* communicative purpose necessarily takes defendant's conduct outside the prohibition of ORS 166.090(1)(a)"). Had Laizure called Taylor without a communicative purpose and with the intent to harass or annoy, his call would not receive First Amendment protection. *See State v. Shifflett*, 285 Or. App. 654, 664 (2017) ("The legislative history of [the telephonic harassment statute] reflects that the bill was drafted to provide relief while still passing constitutional muster."). However, it is undisputed that Laizure called Taylor *with* a communicative purpose, and that he was arrested for doing so. Laizure's call with a communicative purpose is entitled to First Amendment protection, and the Court denies Defendants' motion for summary judgment on this ground.

### D.   Qualified Immunity

Finally, Defendants argue that even if Deputy Tran did not have probable cause to arrest Laizure, Deputy Tran is entitled to qualified immunity. The Court disagrees.

PAGE 10 – OPINION AND ORDER

1. **Legal Standard**

Qualified immunity shields government officials from liability for civil damages arising from conduct that did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A plaintiff can overcome qualified immunity by establishing that "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011).

"'Clearly established' means that, 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.'" *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (quoting *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal citations omitted)).

2. **Analysis**

The Ninth Circuit has explained that "[e]ven if the arrest was made without a warrant and without probable cause, however, the officer may still be immune from suit if it was objectively reasonable for him *to believe* that he had probable cause." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1078 (9th Cir. 2011). "In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum*, 663 F.3d at 1076. The critical question in an unlawful arrest analysis is "whether all reasonable officers would agree that there was no probable cause" for the arrest at issue. *Id*. at 1078.

The Ninth Circuit has held that if an officer is unaware of any facts to establish an element of a crime, the officer's belief in probable cause to arrest is unreasonable. *Mackinney v. Nielsen*, 69 F.3d 1002, 1005 (9th Cir. 1995). In *Mackinney*, the plaintiff was arrested pursuant to a statute which criminalized "every person who willfully resists, delays, or obstructs any officer . . . in the discharge or attempt to discharge his or her office or employment." *Id*. The court held there was no probable cause to support the arrest because there were no facts to support a conclusion that the plaintiff knew that the officers had ordered him to stop what he was doing. *Id*. at 1006. Rather, once the plaintiff realized the officers were asking him to stop what he was doing, it took him a few seconds to comply, but no reasonable officer would interpret the delay as willful resistance to support probable cause to arrest. *Id*. Therefore, the Ninth Circuit found that the arresting officer was not entitled to qualified immunity. *Id*. at 1007.

Similarly, in *Rosenbaum*, the plaintiff was arrested for re-selling free promotional tickets. 663 F.3d at 1073. The defendants argued that there was probable cause to arrest the plaintiff for obtaining money by false pretenses, which required, among other elements, proof of an intent to defraud. *Id*. at 1077. Because there were no facts known to the arresting officer that the plaintiff intended to defraud his customers, the Ninth Circuit found that the arrest was unsupported by probable cause. *Id*. The Ninth Circuit held that "no reasonable officer could believe that Rosenbaum's conduct violated [the] statute" and therefore reversed the district court's grant of summary judgment on the ground of qualified immunity. *Id*. at 1079.

Finally, in *Beck v. City of Upland*, 527 F.3d 853, 866 (9th Cir. 2008), the Ninth Circuit found that an officer's mistake of law in support of an arrest was unreasonable. The statute at issue criminalized threatening police officers, but the law required threats of imminent violence. *Id*. The Ninth Circuit found that the plaintiff's "statements [bore] scant resemblance to those that

have been held to violate [the applicable state law,]" and "[the plaintiff] could not have been understood in context [of a heated discussion over zoning regulations at a civic function] to threaten violence." *Id.* The Ninth Circuit held that there was no probable cause to arrest the plaintiff, and that the officer was not protected by qualified immunity because the unlawful arrest was "in violation of clearly established law at the time it occurred, as it was without probable cause under then-existing California law." *Id.* at 871.

Here, the telephonic harassment statute is clear on its face that it requires as an element the intent to harass or annoy. It is also clearly established law that police officers may not arrest individuals without probable cause. Based on Deputy Tran's statements at the time of the arrest, his police report, and his deposition testimony, it is clear that he misunderstood the required elements of the telephonic harassment statute. Deputy Tran believed he could arrest Laizure merely for disobeying his order. The Court finds that with knowledge of the applicable statute, any reasonable officer would agree that Deputy Tran did not have probable cause to arrest Laizure here. Because Deputy Tran's arrest of Laizure violated clearly established law, Deputy Tran is not entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, the Court GRANTS Laizure's motion for summary judgment (ECF No. 54), as follows: the Court will (1) enter summary judgment for Laizure on his claims for false arrest under Oregon law and Section 1983 (Claims Two and Four), and (2) enter summary judgment for Laizure on the following elements of his malicious prosecution claims: (a) the commencement and prosecution by the defendant of a judicial proceeding against a plaintiff, (b) the termination of the proceeding in the plaintiff's favor, and (c) the absence of

probable cause to prosecute the action (Claims Three and Five).[4] The Court DENIES Defendants' motion for summary judgment (ECF No. 57). The parties shall confer regarding proposed case management deadlines, and file a joint proposal within 14 days.

**IT IS SO ORDERED.**

DATED this 18th day of November, 2019.

*Stacie F. Beckerman*
_____
STACIE F. BECKERMAN
United States Magistrate Judge

---

[4] Judgment will enter on the Section 1983 false arrest claim against Deputy Tran only, as Laizure has not alleged any *Monell* claims against Washington County. *See Monell v. Dep't of Soc. Servs. v. City of New York, et al.*, 436 U.S. 658 (1978). In addition, Laizure has not presented any evidence to support a conclusion that Deputy Tran acted outside the scope of his employment, and therefore judgment will enter on the state false arrest claim against Washington County only pursuant to the Oregon Tort Claims Act. *See* OR. REV. STAT. § 30.265(2)-(3) (barring tort claims against any "officer, employee or agent of a public body whose act or omission within the scope of . . . employment or duties gives rise to the action").